IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THE MONONGALIA COUNTY COAL COMPANY,

      Plaintiff,

v.                           Civil Action No. 1:18-cv-46
                                    (Judge Kleeh)

UNITED MINE WORKERS OF AMERICA,
INTERNATIONAL UNION, and
UNITED MINE WORKERS OF AMERICA,
LOCAL UNION 1702,

      Defendants.


## MEMORANDUM OPINION AND ORDER REMANDING CASE TO ARBITRATOR

### I.   PROCEDURAL HISTORY

The Monongalia County Coal Company ("Plaintiff") brought this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, against the United Mine Workers of America, International Union, and the United Mine Workers of America, Local Union 1702 (collectively, "Defendants"), moving to vacate an arbitration award. This matter comes before the Court on the parties' cross-motions for summary judgment. The motions have been fully briefed and are now ripe for review. For the reasons set forth below, this Court will remand the case to the arbitrator for clarification regarding the award.

### II.  BACKGROUND

The collective bargaining agreement governing this dispute is the National Bituminous Coal Wage Agreement of 2011

("NBCWA"). ECF No. 13-1. The NBCWA establishes work jurisdiction of union-represented employees and provides restrictions on Plaintiff's ability to contract out this work. Id. at 16–21. Article XXIII of the NBCWA provides a procedure for the final and binding resolution of disputes that may arise regarding the application of the NBCWA's provisions. Id. at 305–14. The parties may settle the dispute themselves or they may submit the dispute to a binding arbitration. Id.

This dispute involves work performed at the Monongalia County Mine in Wana, West Virginia, on (1) April 2, 3, and 4, 2016, and (2) April 8, 2016. ECF No. 13-3 at 6, 10. On these dates, Plaintiff used non-bargaining unit personnel to assemble a longwall mining unit. Id. Tim Gibson, a member of Local 9909, filed two grievances, alleging that Plaintiff violated the terms of the NBCWA because Plaintiff hired contractors to perform work reserved for union members. Id.

The parties could not come to a resolution, so the two grievances were consolidated for a hearing before Arbitrator Jacquelin Drucker. ECF No. 13-2. Drucker categorized the work performed as "of the type customarily related" to the production of coal and, therefore, bargaining unit work. Id. at 14. She found that Plaintiff violated Article 1A, Section (a), of the NBCWA. Id. She ordered that Plaintiff "cease and desist from

contracting for this work" and awarded that the grievant "be made whole through compensation equivalent to the straight-time rate for time attributable to the hours worked by the contractor" on the dates in question. Id. at 15. Plaintiff is not challenging the arbitrator's finding of a violation; it is challenging only the award. ECF No. 14-1 at 9 n.6.

## III. GOVERNING LAW

This Court may review labor arbitrators' decisions under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, but this power of review is "extremely limited." Cannelton Indus., Inc. v. Dist. 17, UMWA, 951 F.2d 591, 593 (4th Cir. 1991) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960)). This is because "[t]he parties to a collective bargaining agreement bargained for the arbitrator's interpretation, and 'so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation . . . is different from his.'" Island Creek Coal Co. v. Dist. 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994) (citing Enterprise Wheel, 363 U.S. at 599). The Supreme Court of the United States, in the "Steelworkers Trilogy,"[1] has "emphasized that federal courts

---

[1] The Steelworkers Trilogy includes the following cases: United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574

should refuse to review the merits of an arbitration award under a collective bargaining agreement." Mutual Mining, Inc. v. Dist. 17, UMWA, 47 F.3d 1165, at *2 (4th Cir. 1995) (unpublished). Both an arbitrator's findings of fact and interpretation of the law are accorded great deference. Upshur Coals Corp. v. UMWA, Dist. 31, 933 F.2d 225, 229 (1991). In addition, "[t]he selection of remedies is almost exclusively within the arbitrator's domain." Cannelton, 951 F.2d at 593-54 (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29 (1987)).

Still, there are some limitations on arbitration awards. The award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Misco, 484 U.S. at 38. In addition, an arbitrator may not "impose a punitive award or punitive damages" unless a provision in the collective bargaining agreement provides for them. Island Creek, 29 F.3d at 129 (citing Cannelton, 951 F.2d at 594). In deciding whether an award is punitive or whether it draws its essence from the agreement, courts should be mindful that arbitrators "need not give their reasons for an award," but courts may rely on arbitrators' reasoning to determine whether the arbitrator has applied "his own brand of industrial justice." Cannelton, 951 F.2d at 594. In such situations, a

(1960); and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960).

court may vacate an award or remand for clarification. Id. In reviewing arbitration awards, courts "must be concerned not to broaden the scope of judicial review of arbitration decisions nor to lengthen a process that is intended to resolve labor disputes quickly." Id. at 595.

Because punitive awards are invalid, the Fourth Circuit has upheld district court decisions vacating awards when no evidence of monetary loss was produced. See, e.g., Westinghouse v. IBEW, 561 F.2d 521, 523–24 (4th Cir. 1977) (noting that "[w]ith respect to vacation shutdowns, compensatory damages may be awarded only when a breach of the bargaining agreement causes a monetary loss"); Baltimore Regional Joint Bd. v. Webster Clothes, 596 F.2d 95, 98 (4th Cir. 1979) (concluding that there had been no showing of actual damages, and, therefore, the arbitrator had issued a punitive award).

The Fourth Circuit has also found that cases should be remanded when the basis of an award is unclear. See, e.g., Cannelton, 951 F.2d at 595 (finding that it was unclear whether an award was issued for a notice violation or a contracting violation and, therefore, remanding for clarification). The United States District Court for the Southern District of West Virginia has also remanded cases for clarification when an arbitrator provided no evidence that an award was compensatory.

In Eastern v. UMWA, during a vacation shutdown of the plant, Eastern hired outside contractors to perform work. No. 2:04-0641, 2006 WL 2819537, at *1 (S.D.W. Va. Sept. 28, 2006). The union filed a grievance after concluding that the work was reserved for its members under the collective bargaining agreement. Id. The arbitrator held for the union, finding there was a violation of the agreement. Id. At the end of the arbitration award, the arbitrator wrote that "the union is entitled to be compensated for the amount of the time that the outside contractor spent tearing out the concrete and removing it from beneath the 437 belt." Id.

The arbitrator filed extensive reasoning to support his finding of a violation, but only one sentence addressed the remedy. Id. at *2. Eastern filed a lawsuit, asking the court to vacate the award (challenging only the remedy, not the finding of a violation). Id. at *1. It contended that the remedy was punitive because no employee suffered an actual loss. Id. The court wrote that "[u]nder the unusual circumstances presented here, where the issue of damages is practically left open without discussion, Cannelton teaches by analogy that remand is the best course." Id. at *10. It then upheld the finding of a violation but remanded the case for consideration of damages, noting that "[r]emand [would] allow (1) the arbitrator to

illuminate the basis for his unliquidated monetary award, and (2) then permit the court to discharge its limited review function if a further challenge is made." Id.

The United States District Court for the Northern District of West Virginia took a very similar approach in McElroy v. UMWA. In McElroy, as in Eastern, the remedy was one sentence as well: "McElroy is ordered to pay the local union the reasonable value of the sixteen man-hours involved in changing the No. 13 belt." No. 5:07cv41, 2009 WL 367699, at *5 (N.D.W. Va. Feb. 10, 2009). Upon reconsideration of the case, the court found the analysis in Eastern persuasive and relevant in deciding whether the award was compensatory or punitive in nature. Id. Therefore, the court remanded the case to the arbitrator for clarification regarding the basis for the monetary award. Id. at 6.

## IV. ANALYSIS

### A. The Parties' Contentions

#### 1. Plaintiff's Motion for Summary Judgment [ECF No. 14]

Plaintiff admits that deference should be given to arbitration awards but believes the arbitrator ignored precedent, ignored contractual language, and used her own notion of equity and fairness to come to a decision. Plaintiff believes there are no damages because the grievant was not reasonably available to do the work in question. At the arbitration

hearing, the grievant conceded that he worked regular shifts and overtime during the days at issue, yet the grievant alleges that he lost 58 hours and 30 minutes of work. Plaintiff argues that the award was a windfall to the grievant. Money damages may only be awarded to remedy a proven loss, which, Plaintiff argues, does not exist here. Defendants produced no evidence of loss, so the award, Plaintiff argues, is punitive in nature.

### 2.    Defendants' Response [ECF No. 17]

In response, Defendants contend that at the hearing, Defendants offered evidence of several awards where compensatory damages were awarded even though no miner was out of work. Defendants also argue that "loss" can mean different things. For example, work given to outside contractors is lost forever for the bargaining unit, and this also affects the bargaining unit members' job security. Defendants argue that the award is consistent with the common law of the industry. There is no contractual requirement, they argue, that Defendants demonstrate that there were union workers available to perform the work in question. Furthermore, the arbitration award is entitled to judicial deference.

### 3.    Defendants' Motion for Summary Judgment [ECF No. 15]

Defendants argue that under the *Steelworkers* Trilogy, great deference should be given to arbitration awards. In these

proceedings, Defendants argue, they need only prove that the work in question was bargaining work; they need not prove that the grievant was not working at the time the work was contracted out. Plaintiff had an ample supply of union labor at all times. Contracting out hurts the job security of bargaining unit members, so arbitrators appropriately provide monetary damages to compensate for breaches. At the arbitration hearing, Defendants submitted several awards as precedent for situations in which a compensatory award was granted even though the company argued that no miner was out of work when the subcontracting occurred. An arbitrator has implicit authority, Defendants argue, to specify the appropriate remedy for a breach of the agreement. In summary, Defendants believe the award is wholly consistent with the NBCWA and draws its essence from it.

### 4.   Plaintiff's Response [ECF No. 16]

In its response, Plaintiff recognizes that courts must defer to arbitration awards. However, Plaintiff points out, arbitrators do not have unfettered discretion. Awards must still draw their essence from the agreement and cannot simply reflect an arbitrator's own notions of industrial justice. Binding precedent provides that money damages may only be awarded under the NBCWA to a grievant who can establish he suffered a proven loss. Here, it has not been established that the grievant

suffered any monetary loss. Defendants, Plaintiff argues, rely on nonbinding cases with different factual scenarios.

**B.   Review of the Arbitrator's Award**

This Court recognizes its limited role in deciding arbitration disputes. However, under Fourth Circuit precedent, it is clear that a lack of evidence of monetary loss will render an award non-compensatory and, therefore, punitive. Here, the issue of damages is practically without discussion in Arbitrator Jacquelin Drucker's award. As in Eastern and McElroy, the arbitrator's award includes only one sentence about the remedy. The arbitrator orders "compensation equivalent to the straight-time rate for time attributable to the hours worked by the contractor." ECF No. 13-2 at 15.

It is unclear what, if any, evidence the arbitrator considered in issuing this remedy. The award contained no supporting findings of monetary loss to establish the award as compensatory rather than punitive. Furthermore, Defendants do not argue that they provided evidence of loss at the arbitration hearing. Rather, they argue that they submitted precedent that the court should follow (cases in which courts upheld arbitration awards for unions even when the grievants were working during the time period in question). When the basis of a monetary award is unclear, both the Fourth Circuit and federal

district courts in West Virginia have remanded for clarification from the arbitrator. As Judge Copenhaver astutely noted in _Eastern_, "where the issue of damages is practically left open without discussion, _Cannelton_ teaches by analogy that remand is the best course." 2006 WL 2819537, at *10. This Court now finds the same.

**V.    CONCLUSION**

The Court hereby **ORDERS** that this case be **REMANDED** to the arbitrator for clarification of the basis for the monetary award granted to Defendants. Defendants are **ORDERED** to provide the Clerk of this Court with the address of Arbitrator Jacquelin Drucker. It is further **ORDERED** that this action be, and it hereby is, **DISMISSED WITHOUT PREJUDICE** and **STRICKEN** from the docket.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this memorandum opinion and order to counsel of record and to Arbitrator Jacquelin Drucker at the address to be provided by Defendants.

DATED: March 22, 2019

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE